Ralph **FURRER** and Rosemarie Furrer, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 77–1588.

United States Court of Appeals, Ninth Circuit.

Dec. 30, 1977.

Preston C. Hiefield, Jr. (argued), of Williams, Stark, Hiefield, Norville & Griffin, Portland, Ore., for petitioner.

Michael Paup (argued), of Dept. of Justice, Washington, D. C., for respondent.

Before HUFSTEDLER, SNEED and KENNEDY, Circuit Judges.

PER CURIAM:

In this case we review the finding of the Tax Court that the damages taxpayer received for breach of his agency contract with an insurance company are taxable as ordinary income and not as capital gain. We affirm.

Ralph Furrer was a special agent for Industrial Hospital Association (IHA). His contract with IHA gave him the exclusive right to recruit agents to sell IHA's policies; he also developed new types of policies for IHA. He was paid entirely on a commission basis, computed as a percentage of gross premiums paid on policies. The agreement provided for termination without notice, but IHA was prohibited from terminating during any year in which net premiums exceeded a certain amount. Furrer maintained files containing the agency agreements between the IHA and the individual agents he recruited, renewal agreements, and correspondence about claim disputes.

In violation of its agreement, IHA terminated Furrer's contract in 1968. In subsequent declaratory judgment and breach of contract actions, Oregon state courts found that the contract was wrongfully terminated and awarded Furrer damages of $213,-000.

 The characterization of the damages awarded depends upon both the nature of the claims asserted and the actual basis of the recovery. *Thomson v. Commissioner of Internal Revenue*, 406 F.2d 1006 (9th Cir. 1969); *Spangler v. Commissioner of Internal Revenue*, 323 F.2d 913 (9th Cir. 1963). Thus, where there is a final judgment (in contrast to a settlement before judgment), the Court must examine both the claims set out in the pleadings and the proof at trial, and the characterization of the judgment by the awarding court. Whether the claims presented and the characterization of the award fit that award into the categories of "capital gain" or "ordinary income" is a question of federal tax law. *See Gray v. Commissioner of Internal Revenue*, 561 F.2d 753 (9th Cir. 1977).

Appellant Furrer presents two arguments for characterizing the judgment as capital gain. The first argument assumes that the judgment was compensation solely for the loss of contract rights but asserts that those rights were in themselves capital assets. Rather than a right to earn commissions, the agreement is viewed as giving appellant

"substantial intangible property rights," including a nonterminable monopolistic right to "develop" sales territories in states where IHA was licensed to do business.

Appellant seeks to support his characterization of the judgment with the statement of the state trial judge who testified before the Tax Court that:

> the judgment which I awarded was intended to reflect the value of his business efforts based upon his exclusive business rights under the agreement . . . and it was not intended to reflect payment for loss of prospective profits. I intended that an entire insurance business be valued . . . . [capitalization of earnings] was just one method available to me to determine the value of the contract rights. It was no different than valuing any other asset.

Without deciding what weight may be accorded to a judge's post hoc testimony about a judgment he has rendered, we find this testimony affords appellant little comfort. Our holding does not rest upon the fact that the trial court arrived at the award through capitalization of earnings, a method equally applicable to determining the value of a capital asset.[1] The pleadings, proof or judgment simply contain no evidence that the "entire insurance business" amounted to anything more than the right to earn commissions.

■ If all contracts granting rights could be considered capital assets, without inquiry into the nature of the rights granted, almost all ordinary income from salaries, wages or commissions could be transformed into capital gain. Furrer's right was the right to earn commission income. A long line of authority, some dealing with insurance agents, supports the conclusion that a lump sum payment for the termination of an agency relationship is ordinary income. This is true even though the contract be nonterminable and exclusive. *Holt v. Commissioner of Internal Revenue*, 303 F.2d 687 (9th Cir. 1962); *Vaaler v. United States*, 454 F.2d 1120 (8th Cir. 1972); *Elliott v. United States*, 431 F.2d 1149 (10th Cir. 1970); *Brown v. Commissioner of Internal Revenue*, 40 T.C. 861 (1963). The fact that others are excluded from the sources available to Furrer for earning income in no way changes the fact that his income derived from personal services and that what he lost through termination was the right to earn future income. And as we noted in *Holt v. Commissioner of Internal Revenue, supra*, at 691, "[t]he nature of the right to receive future income as ordinary income does not change into capital gain by the mere receipt of a lump sum in lieu of such future payments." *Commissioner of Internal Revenue v. P. G. Lake Inc.*, 356 U.S. 260, 78 S.Ct. 691, 2 L.Ed.2d 743 (1958); *Hort v. Commissioner of Internal Revenue*, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1941). This attempted transubstantiation of income into capital must fail because the essential element—the capital asset, tangible or intangible—is not present.

■ Appellant's second argument is that the termination of the agreement destroyed certain capital assets which he developed and owned, and that the judgment was, at least in part, in compensation for those assets. But appellant presented no such argument in his pleadings or at trial in the state court. Only before the Tax Court did he argue that the termination resulted in a loss of valuable good will and files of documents and information. In a detailed analysis, the Tax Court rejected this argument, concluding that "the real value was in the right to receive future commissions." It found no evidence that the appellant had a right to ownership or exclusive use of the files or that those files contained anything not otherwise available to IHA. It conclud-

---

1. In calculating damages, the state court subtracted the present value of appellant's future income, based upon his having secured a job at another company at a salary of $18,000 per year. *See Furrer v. International Health Assurance Co.*, 256 Or. 429, 474 P.2d 759, 767–68 (1970). Such mitigation is permissible only against an award for lost income and not against the loss of capital assets. If, on the other hand, the award was for the loss in part of commission income and in part of capital assets, some allocation would have been expected, since the offsetting income could be applied only against the former.

ed that whatever goodwill Furrer built up for IHA belonged to the latter, and whatever goodwill he built up for himself (such as personal contacts with the agents he recruited) he retained after the termination. *See Vaaler v. United States, supra,* at 1123. Appellant presents to us no evidence which undermines these largely factual conclusions.

In sum, appellant has failed to prove that the contract rights were themselves capital assets or that the termination destroyed other capital assets which he had developed. The decision of the Tax Court is therefore AFFIRMED.